DOCKETED

NOV - 7 2003

JUDGE ASPEN

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MAGISTRATE JUDGE KEYS

|  |  |
|---|---|
| DANA CORPORATION and TORQUE-TRACTION TECHNOLOGIES, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| S&S TRUCK PARTS, INC., | ) ) ) |
| Defendant. | ) ) ) |

Civil Action No.:

# 03C 7910

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs, Torque-Traction Technologies, Inc. and Dana Corporation, by their undersigned attorneys, as and for their complaint against S&S Truck Parts, Inc. allege as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff Dana Corporation ("Dana") is a Virginia corporation with its principal place of business at 4500 Dorr Street, Toledo, Ohio 43615.

2.      Plaintiff Torque-Traction Technologies, Inc. ("Torque-Traction") is a wholly owned subsidiary of Dana and is an Ohio corporation with its principal place of business at 6201 Trust Drive, Holland, Ohio 43528.

3.      Upon information and belief, Defendant S&S Truck Parts, Inc. ("S&S") is an Illinois corporation with its principal place of business at 600 W. Irving Park Road, Schaumburg, Illinois 60193.

4.      This is an action for patent and trademark infringement based upon the patent and trademark laws of the United States.  Jurisdiction and venue are based upon 28 U.S.C. §§ 1338, and 1400(b) and 1391, respectively.

## SUBSTANTIVE ALLEGATIONS OF PATENT INFRINGEMENT

5.    Plaintiffs reincorporate and allege as if fully set forth herein all of the allegations contained above in paragraphs 1-4.

6.    On June 20, 2000, United States Letters Patent No. 6,077,166 (the "'166 Patent") was duly and legally issued to inventor James T. Reynolds. A copy of the '166 Patent is attached hereto as **Exhibit 1** and made part of this Complaint.

7.    The '166 Patent claims *inter alia* a dust guard and cross assembly for a universal joint.

8.    Plaintiff Torque-Traction, by assignment, is the owner of the '166 Patent.

9.    Defendant S&S has directly infringed, induced infringement and contributorily infringed Plaintiff Torque-Traction's exclusive rights in the '166 Patent by manufacturing, importing, offering for sale and/or selling products that embody the inventions of and are within the scope of the '166 Patent and by causing others to offer for sale, sell and use the infringing products. Defendant S&S continues to infringe, induce and contributorily infringe.

10.    Upon information and belief, Defendant S&S has had actual notice of Plaintiff Torque-Traction's rights and has willfully infringed, induced infringement and contributorily infringed the '166 Patent and will continue to do so unless enjoined by the Court.

11.    As a direct and proximate result of Defendant S&S's infringement, Plaintiff Torque-Traction has suffered injury and damage, which continues to accrue in an amount to be determined at trial.

## SUBSTANTIVE ALLEGATIONS OF TRADEMARK INFRINGEMENT

12.    Plaintiff Dana is the owner of the following trademarks and United States registrations therefore which are subsistent on the Principal Register of the United States Patent & Trademark Office:

| Mark | Reg. No. | Goods |
|------|----------|-------|
| SPICER | 679,554 | Power transmission mechanisms—namely, gears and gear boxes, power take-offs, hydraulic torque converters, clutches, universal joints, propeller shafts and axles, and parts thereof |
| SPICER | 688,178 | Metal stampings, castings, and forgings for parts used in automotive vehicles, agricultural equipment and machinery, industrial equipment and aircraft |
| SPL***X | 1,802,662 | Universal joint kits for use in drivelines for vehicles |
| SPL | 2,024,024 | Driveshaft assemblies for land vehicles, and parts thereof; namely, shafts, yokes, universal joints, bearings, bearing caps, splined sleeves, spring tabs, straps and bolts |

Copies of the registration certificates for these registrations are attached hereto as **Exhibit 2**. Said registrations are valid, subsisting, and incontestable pursuant to 15 U.S.C. § 1065 and constitute conclusive evidence of the validity of the marks (hereinafter "the Dana Trademarks" unless the context indicates otherwise) and of Dana's exclusive right to control the use of the marks on and in connection with the goods recited in the registration certificates and substantially related goods.

13. Since long prior to the acts of Defendant S&S complained of herein, Plaintiff Dana has used the Dana Trademarks on and in connection with the goods recited in the registrations identified in paragraph 12 above and on and in connection with goods related thereto. Dana has expended a great deal of time, effort, and money in the promotion and advertisement of goods and services sold and offered for sale under the Dana Trademarks.

14. The goods marketed under the Dana Trademarks are of very high quality and are among the leading products in this industry. Plaintiff Dana has expended tremendous time,

effort, and money in advertising and promoting these products under the Dana Trademarks. As a result, the Dana Trademarks are famous among the relevant purchasing public and the trade as denoting Plaintiff Dana as the source of the types of goods recited in the registration certificates for those marks and substantially related goods. The SPICER and SPL trademarks are known and recognized as signifying products that are leaders in their industry.

15.     Plaintiff Dana is a leading manufacturer and supplier of vehicular components in the automotive, light commercial and off-highway vehicle markets to customers in the United States and worldwide. Plaintiff Dana sells its vehicular components to vehicle manufacturers and aftermarket companies throughout the United States for use as OEM equipment and as replacement parts.

16.     Plaintiff Dana has a web-site where it advertises its products and services and also displays information about the company and its products and services. The web-site is accessible through the domain name, www.dana.com. The Dana Trademarks are used prominently on this site.

17.     As a result of the widespread and continuous use and promotion of the Dana Trademarks, the marks have achieved tremendous fame and distinctiveness and are widely known and recognized as source-identifiers for a variety of goods and services originating with Dana and serve to distinguish those goods and services from those of others. Said marks represent and embody Plaintiff Dana's enviable reputation and very valuable goodwill among members of the trade and the purchasing public.

18.     Upon information and belief, Defendant S&S advertises and sells its products through the Internet and also through a network of distributors throughout the country and is a direct competitor of Plaintiff Dana in the vehicular aftermarket parts field. Defendant S&S sells

- 4 -

parts that directly compete with the parts and other goods sold by Plaintiff Dana under the Dana Trademarks.

19.     Defendant S&S is using the Dana Trademarks without authorization to sell competing products not originating with or endorsed or authorized by Plaintiff Dana, and by virtue of this conduct, Defendant S&S is passing off products not originating with or authorized by Plaintiff Dana as being such.  In addition, upon information and belief, Defendant S&S is intentionally inducing customers to purchase Defendant S&S's replacement parts that compete with Plaintiff Dana's replacement parts on the false assumption that those products are genuine Dana products, which they are not.

20.     Specifically, Defendant S&S is distributing and has distributed advertising materials that contain unauthorized uses of the Dana Trademarks.  Attached hereto as **Exhibit 3** is a true and correct copy of an advertising piece distributed by Defendant S&S.  This piece advertises that Defendant S&S is selling "SPL U-JOINTS," and this piece references several U-joints sold by Defendant S&S that are not genuine Dana parts but are nevertheless identified by Plaintiff Dana's federally registered SPL trademark.  Defendant S&S's advertising these non-Dana U-joints as "SPL U-joints" and identifying them as parts "SPL90X, SPL170X, and SPL250X" and other parts in the flyer as "SPL90 STRAP KIT, SPL 170 STRAP KIT, and SPL 250 STAP KIT" is a false designation of origin and constitutes an effort by Defendant S&S to pass these products off as being genuine Dana products, which they are not.

21.     Defendant S&S's efforts to cause confusion go beyond its advertising to its packing slips, packaging, and upon information and belief, methods of doing business. Specifically, Defendant S&S uses and/or induces others to use or contributes to others' use of Plaintiff Dana's SPICER and SPL trademarks on the packaging for non-Dana parts Defendant S&S sells, and Defendant S&S uses Plaintiff Dana's SPL trademark on the packing slips

- 5 -

included with those products. Attached hereto as **Exhibit 4** is a true and correct copy of a packing slip for a product sold by Defendant S&S, and on the packing slip, Defendant S&S identifies the products being sold as "SPL SERIES" U-joints and as "SPL90X, SPL170X, and SPL250X" products. In addition, attached hereto as **Exhibit 5** is a true and correct copy of another of Defendant S&S's packing slips identifying the product being sold as an "SPL90X" universal joint. None of the products identified in these packing slips are genuine Dana products.

22.      Attached hereto as **Exhibit 6** are true and correct copies of photographs of packaging for Defendant S&S's products. On this packaging, the parts inside, which originated with Defendant S&S and not with Plaintiff Dana, are identified as an "SPL90X" product; an "SDSPL250;" and as an "U-Joint SPL90 Series – SPICER LIFE."

23.      Thus, Defendant S&S is passing off its products as genuine Dana products and utilizing the Dana Trademarks to do so, thus trading on Plaintiff Dana's reputation and goodwill.

24.      In addition to the foregoing conduct, Defendant S&S is using Plaintiff Dana's "Dana" and "SPICER" names and marks improperly on its website in a manner that exacerbates the confusion caused by Defendant S&S's other actions alleged above.

25.      Upon information and belief, Defendant S&S has actual and constructive knowledge of the  Dana Trademarks and of Plaintiff Dana's rights in them.

26.      Due to Defendant S&S's conduct alleged above, purchasers and prospective purchasers of Defendant S&S's goods and services and persons accessing the Internet are likely to be and on information and belief have been confused and deceived into believing, contrary to fact, that Defendant S&S's goods and services are genuine Dana products, which they are not.

27.      Defendant S&S's conduct alleged herein creates a likelihood of confusion, mistake and deception as to the source and sponsorship of Defendant S&S's goods and services,

all to Plaintiff Dana's irreparable loss and damage. In addition, Defendant S&S's acts complained of herein are likely to dilute and have diluted the distinctive quality of the Dana Trademarks and has caused actual damage to Plaintiff Dana and the Dana Trademarks. Defendant S&S's conduct is likely to dilute and has diluted the ability of said marks to function as source-indicators.

28.     Plaintiff Dana has suffered and will continue to suffer irreparable injury to its reputation and goodwill unless Defendant S&S is enjoined from continuing the conduct complained of, which injury cannot be adequately compensated monetarily. As long as Defendant S&S is allowed to continue the acts complained of, Plaintiff Dana's reputation is at Defendant S&S's mercy.

29.     Defendant S&S's acts complained of herein were committed and are being committed willfully.

## CAUSES OF ACTION

### COUNT ONE
#### FEDERAL PATENT INFRINGEMENT

30.     Plaintiff Torque-Traction realleges each and every allegation of paragraphs 1 through 11 of this complaint as though fully set forth herein.

31.     The acts of Defendant S&S complained of herein constitute patent infringement in violation of 35 U.S.C. § 271.

### COUNT TWO
#### FEDERAL TRADEMARK INFRINGEMENT

32.     Plaintiff Dana realleges each and every allegation of paragraphs 1 through 4 and 12 through 29 of this complaint as though fully setforth herein.

33.     The acts of Defendant S&S complained of herein constitute trademark infringement in violation of 15 U.S.C. §§ 1114.

## COUNT THREE
### FEDERAL UNFAIR COMPETITION

34.     Plaintiff Dana realleges each and every allegation of paragraphs 1 through 4 and 12 through 29 of this complaint as though fully set forth herein.

35.     The acts of Defendant S&S complained of herein constitute a violation of 15 U.S.C. § 1125 (a).

## COUNT FOUR
### FEDERAL TRADEMARK DILUTION

36.     Plaintiff Dana realleges each and every allegation of paragraphs 1 through 4 and 12 through 29 of this complaint as though fully set forth herein.

37.     The acts of Defendant S&S complained of herein constitute trademark dilution under 15 U.S.C. § 1125 (c)(1) and (2).

## COUNT FIVE
### STATE COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

38.     Plaintiff Dana realleges each and every allegation of paragraphs 1 through 4 and 12 through 29 of this complaint as though fully set forth herein.

39.     The acts of Defendant S&S complained of herein constitute common law trademark infringement and unfair competition under the laws of the State of Illinois and of the several states.

## COUNT SIX
### VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

40.     Plaintiff Dana realleges each and every allegation of paragraphs 1 through 4 and 12 through 29 of this complaint as though fully set forth herein.

41.     Defendant's use of the Dana Trademarks and Dana trade name, or colorable imitations thereof, in connection with defendant's goods, and promotion of such goods,

constitutes unfair competition under the Illinois Uniform Deceptive Trade Practices Act, as provided for by 815 ILCS §§ 510/1-510/7.

## COUNT SEVEN
### VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

42.     Plaintiff Dana realleges each and every allegation of paragraphs 1 through 4 and 12 through 29 of this complaint as though fully set forth herein.

43.     Defendant's use of the Dana Trademarks and trade name, or colorable imitations thereof, is an unfair method of competition and an unfair or deceptive act or practice under of the Illinois Consumer Fraud and deceptive Business Practices Act, as provided for by 815 ILCS §§ 505/1, *et seq.*

## COUNT EIGHT
### DILUTION UNDER THE ILLINOIS TRADEMARK REGISTRATION AND PROTECTION ACT

44.     Plaintiff Dana realleges each and every allegation of paragraphs 1 through 4 and 12 through 29 of this complaint as though fully set forth herein.

45.     Defendant's use, promotion and advertisement of its goods under the Dana Trademarks has diluted the distinctiveness of the Dana Trademarks in violation of the Illinois Trademark Registration and Protection Act, as provided for by 765 ILCS § 1036/65.

## JURY DEMAND

Plaintiffs demand a trial by jury on all matters and issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor and against Defendant S&S granting the following relief:

A.     Declare that Defendant S&S has infringed, induced others to infringe or contributed to the infringement of any claim of the '166 Patent;

- 9 -

B. Award damages to Plaintiff Torque-Traction for Defendant S&S's infringement of the '166 Patent;

C. Enjoin Defendant S&S, its officers, partners, employees, agents, parents, subsidiaries, attorneys, and anyone acting or participating with them from manufacturing, making, selling, offering for sale, importing or using product that infringes the '166 Patent;

D. Find this case exceptional pursuant to 35 U.S.C. §285, and award Plaintiff Torque-Traction its attorney fees and costs; and

E. Enjoin Defendant S&S and its servants, agents, employees, successors and assigns, and all persons action in concert with it, enjoining them from:

 (a) using in any manner:

  (i) the Dana Trademarks; or

  (ii) any colorable imitation of any of the Dana Trademarks on or in connection with any goods or services not originating entirely with Dana;

 (b) using the Dana Trademarks or any colorable imitation thereof on or in connection with any of Plaintiff Dana's goods or services or in any other manner likely to cause confusion, mistake or deception as to the source or sponsorship of Plaintiff Dana's goods or services;

 (c) holding itself and/or any business it is connected with out to the public as being authorized by Plaintiff Dana or as being affiliated with or sponsored by Plaintiff Dana in any manner or committing any acts likely to imply such a relationship or affiliation;

(d)    passing off any non-Dana products and services as originating with or being sponsored or authorized by Plaintiff Dana;

(e)    further diluting the distinctive value of the Dana Trademarks; and

(f)    misusing Plaintiff Dana's name and marks on the Internet or otherwise.

F.    Require Defendant S&S to deliver up to Plaintiff Dana for destruction all goods, signs, advertisements, literature, business forms, cards, labels, packages, wrappers, pamphlets, brochures, receptacles, and any other written or printed material in its possession or under its control which bear the Dana Trademarks or any colorable imitation thereof or any mark confusingly similar thereto, which was not manufactured by or for Plaintiff Dana and any plates, molds and other means of making the same;

G.    Require Defendant S&S to disclose to Plaintiff Dana all persons to whom Defendant S&S has sold products that Defendant S&S misidentified as "SPL" or SPICER products and require Defendant S&S to take remedial action to correct and dispel any confusion of those customers or others;

H.    Require an accounting of profits made by Defendant S&S as a result of the acts complained of herein;

I.    Award damages sustained by Plaintiff Dana as a result of the acts complained of herein, to be trebled in accordance with 15 U.S.C. § 1117;

J.    Award Plaintiff Dana attorneys' fees pursuant to 15 U.S.C. § 1117 and 815 ILCS §§ 510/1-510/7;

K.    Award Plaintiff Dana punitive damages for Defendant S&S's continued outrageous, intentional, and egregious deception of consumers and violation of Plaintiff Dana's rights; and

L.     Award Plaintiffs interest, costs, and such other relief as the court may deem just and equitable.

Respectfully submitted,

**MICHAEL BEST & FRIEDRICH LLP**

Dated November 6, 2003

By: _____

James R. Troupis                   Manotti L. Jenkins
MICHAEL BEST & FRIEDEICH, LLP    Michael K. Nutter
One South Pinckney Street         MICHAEL BEST & FRIEDRICH, LLP
Madison, Wisconsin 53701-1806   401 N. Michigan Ave., Suite 1900
Telehone: (608) 257-3501          Chicago, Illinois 60611
Facsimile: (608) 283-2275         Telephone: (312) 222-0800
                                       Facsimile: (312) 222-0818

Michael E. Husmann
Dyann L. Kostello                   Attorneys for Plaintiffs
MICHAEL BEST & FRIEDRICH, LLP    DANA CORPORATION and
100 E. Wisconsin Avenue, Suite 3300   TORQUE-TRACTION TECHNOLOGIES, INC.
Milwaukee, Wisconsin 53202
Telephone: (414) 271-6560
Facsimile: (414) 277-0656

- 12 -

**EXHIBIT 1**

US006077166A

## United States Patent [19]

### Reynolds

[11] **Patent Number:** 6,077,166

[45] **Date of Patent:** Jun. 20, 2000

[54] **DUST GUARD AND CROSS ASSEMBLY FOR A UNIVERSAL JOINT**

[75] Inventor: **James T. Reynolds**, Toledo, Ohio

[73] Assignee: **Dana Corporation**, Toledo, Ohio

[21] Appl. No.: **09/093,456**

[22] Filed: **Jun. 8, 1998**

[51] Int. Cl.⁷ ............................................... **F16D 3/16**

[52] U.S. Cl. .............................................. **464/133**

[58] Field of Search ........................... 464/7, 11, 14, 464/128, 131, 133; 277/562, 634, 635

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 771,637 | 10/1904 | Hoffmann . |
| 2,773,367 | 12/1956 | Slaght ........................... 464/11 |
| 3,091,948 | 6/1963 | Zeller ........................... 464/131 |
| 3,266,269 | 8/1966 | Stokely . |
| 3,377,820 | 4/1968 | Smith, Jr. ...................... 464/14 |
| 3,832,865 | 9/1974 | Lewis . |
| 3,846,995 | 11/1974 | Mangiavacchi . |
| 4,310,206 | 1/1982 | Weible ........................... 464/11 |
| 4,366,996 | 1/1983 | Grandel ........................ 464/11 |
| 4,512,672 | 4/1985 | Olschewski et al. ............ 277/562 |
| 4,515,574 | 5/1985 | Mazziotti ...................... 464/131 |
| 4,524,677 | 6/1985 | Ashman et al. ................. 277/634 |

| | | |
|---|---|---|
| 4,861,315 | 8/1989 | Mazziotti ...................... 464/14 |
| 4,874,349 | 10/1989 | Gall .............................. 464/131 |
| 5,588,915 | 12/1996 | Smith ............................ 464/14 |
| 5,716,277 | 2/1998 | Reynolds ....................... 464/11 |
| 5,769,723 | 6/1998 | Faulbecker et al. ............. 464/11 |

*Primary Examiner*—Anthony Knight
*Assistant Examiner*—Greg Binda
*Attorney, Agent, or Firm*—MacMillan, Sobanski & Todd, LLC

[57] **ABSTRACT**

A structure for positively retaining the bearing cups on the trunnions of a universal joint cross prior to assembly into a vehicle includes a cross having a body portion with a plurality of trunnions extending outwardly therefrom. Each of the trunnions has an annular ridge formed thereon defining an increased outer diameter. A bearing cup is rotatably mounted on each of the trunnions. Each of the bearing cups has a rigid dust guard attached thereto. Each of the dust guards has an inwardly extending portion that defines an inner diameter. The inner diameters defined by the inwardly extending portions of the dust guards are smaller than the outer diameters defined by the annular ridges. Thus, during installation, the inwardly extending portions of the dust guards snap over the outwardly extending ridges formed on the trunnions. In this manner, the bearing cups are positively retained on the trunnions during shipment.

**20 Claims, 3 Drawing Sheets**



**U.S. Patent**    Jun. 20, 2000    Sheet 1 of 3    **6,077,166**



# FIG. 1



FIG. 2



**FIG. 3**

6,077,166

**1**

# DUST GUARD AND CROSS ASSEMBLY FOR A UNIVERSAL JOINT

## BACKGROUND OF THE INVENTION

This invention relates in general to universal joints and in particular to an improved structure for positively retaining the bearing cups on the trunnions of a universal joint cross prior to assembly into a vehicle.

Universal joints are well known devices that provide a driving connection between two members adapted to rotate about non-aligned axes of rotation. Universal joints are widely used to connect rotatable members in vehicle drive train systems. In a typical drive train system, a first universal joint is connected between an output shaft of an engine/transmission assembly and a first end of a driveshaft tube, while a second universal joint is connected between a second end of the driveshaft tube and an input shaft of an axle assembly. The universal joints provide a rotational driving connection from the output shaft of the engine/transmission assembly through the driveshaft tube to the input shaft of the axle assembly, while accommodating a limited amount of misalignment between the rotational axes of these three shafts.

A typical structure for a universal joint includes a cross having a central body portion with four cylindrical trunnions extending outwardly therefrom. The trunnions are oriented in a single plane and extend at right angles relative to one another. A hollow cylindrical bearing cup is mounted on the end of each of the trunnions. Needle bearings or similar means are provided between the outer cylindrical surfaces of the trunnions and the inner cylindrical surfaces of the bearing cups to permit relative rotational movement therebetween. The bearing cups mounted on a first opposed pair of the trunnions are connected to a first yoke which, in turn, is secured to one of the rotatable components of the vehicle drive train system. Similarly, the bearing cups mounted on a second opposed pair of the trunnions are connected to a second yoke which, in turn, is secured to a second one of the rotatable components of the vehicle drive train system.

Frequently, the first and second universal joints are manufactured concurrently with the driveshaft tube at a first location, then shipped as a unit to a second location for assembly with the other components of the vehicle drive train system. In such a manufacturing process, yokes are initially secured to the ends of the driveshaft tube, then a universal joint is connected to each of the yokes. Thus, for each of the universal joints, only one opposed pair of the bearing cups is connected to a yoke and, therefore, positively retained on the respective trunnions. The other opposed pair of the bearing cups remains mounted on the respective trunnions, but is not positively retained thereon. Following installation on the yokes, each of the universal joints is purged with lubricant. Such purging is well known in the art and involves the injection of lubricant within the cross at a relatively high pressure. The lubricant passes through bores formed through each of the trunnions so as to move into the regions of the bearings disposed between the bearing cups and the trunnions.

It is known to provide elastomeric seals about the open ends of the bearing cups to retain lubricant in the region between the outer surface of the trunnion and the inner surface of the bearing cup where the roller bearings are located. The elastomeric seals also function to prevent the entry of dirt and other contaminants into the regions where the roller bearings are located. Additionally, it is known to provide rigid dust guards about the open ends of the bearing

**2**

cups to protectively cover the elastomeric seals, and further to prevent the entry of dirt and other contaminants into the regions where the roller bearings are located. In some instances, the elastomeric seal and rigid dust guard have been combined into a single seal and dust guard assembly.

In the past, the rigid dust guards have been utilized to retain the bearing cups on the trunnions during shipment from the manufacturing facility to the assembly facility, as described above. To accomplish this, it is known to form the dust guard having a first portion that frictionally engages the outer surface of the trunnion and a second portion that engages an annular groove formed in the outer surface of the bearing cup. Although this structure has been generally effective, it has been found that the bearing cups can still become dislodged during shipment if a large impact is applied thereto. Even if the bearing cups are not removed from the trunnions as a result of these impacts, they may become misaligned therewith. Such misalignment is undesirable because it can result in non-uniform sealing pressures being exerted against the trunnions, resulting in non-uniform lubricant injection during the purging process. Thus it would be desirable to provide an improved structure for positively retaining the bearing cups on the trunnions of a universal joint cross prior to assembly.

## SUMMARY OF THE INVENTION

This invention relates to an improved structure for positively retaining the bearing cups on the trunnions of a universal joint cross prior to assembly into a vehicle. A cross includes a body portion having a plurality of trunnions extending outwardly therefrom. Each of the trunnions has an annular ridge formed thereon defining an increased outer diameter. A bearing cup is rotatably mounted on each of the trunnions. Each of the bearing cups has a rigid dust guard attached thereto. Each of the dust guards has an inwardly extending portion that defines an inner diameter. The inner diameters defined by the inwardly extending portions of the dust guards are smaller than the outer diameters defined by the annular ridges. Thus, during installation, the inwardly extending portions of the dust guards snap over the outwardly extending ridges formed on the trunnions. In this manner, the bearing cups are positively retained on the trunnions during shipment.

Various objects and advantages of this invention will become apparent to those skilled in the art from the following detailed description of the preferred embodiment, when read in light of the accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is an elevational view, partially in cross section, of a cross for a universal joint in accordance with this invention.

FIG. 2 is an enlarged sectional elevational view of one of the trunnions of the cross illustrated in FIG. 1.

FIG. 3 is an enlarged sectional elevational view of a portion of trunnion of the cross illustrated in FIG. 2.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring now to the drawings, there is illustrated in FIG. 1 a cross, indicated generally at 10, in accordance with this invention. The cross 10 is adapted to form a portion of a conventional universal joint (not shown). The cross 10 includes a central body portion 11 having a plurality of trunnions, indicated generally at 12, extending outwardly

6,077,166

3

from the body portion 11. In the illustrated embodiment, four of such trunnions 12 are formed integrally with the body portion 11. The trunnions 12 are disposed at right angles relative to one another and are oriented so as to lie in a single plane. The trunnions 12 are generally hollow and cylindrical in shape and define respective axes through the trunnions 12.

As best shown in FIG. 2, each of the trunnions 12 includes a cylindrical outer friction surface 12a that extends outwardly from the body portion 11 of the cross 10. An annular ridge 12b is formed in the friction surface 12a at or near the axially outer end thereof. A first tapered surface 12c extends axially outwardly from the annular ridge 12b. The first tapered surface 12c decreases in diameter as it extends axially outwardly from the friction surface 12a. A cylindrical sealing surface 12d extends axially outwardly from the tapered surface 12c. The sealing surface 12d defines a diameter that is slightly smaller than the diameter defined by the friction surface 12a. A second tapered surface 12e extends axially outwardly from the sealing surface 12d. The second tapered surface 12e also decreases in diameter as it extends axially outwardly from the sealing surface 12d. A cylindrical bearing surface 12f extends axially outwardly from the tapered sealing surface 12e. The bearing surface 12f defines a diameter that is slightly smaller than the diameter defined by the sealing surface 12d. The bearing surface 12f terminates at an axially outer end surface 12g of the trunnion 12.

A bearing cup, indicated generally at 20, is mounted about each of the trunnions 12 of the cross 10. Each of the bearing cups 20 is generally hollow and cylindrical in shape, including a closed end 20a, an open end 20b, and a smooth inner cylindrical bearing surface 20c. When mounted about the trunnion 12, the closed end 20a of the bearing cup 20 is disposed adjacent to the axially outer end surface 12g of the trunnion 12, while the inner bearing surface 20c of the bearing cup 20 is disposed concentrically about the outer cylindrical bearing surface 12f of the trunnion 12. The diameter defined by the inner bearing surface 20c of the bearing cup 20 is somewhat larger than the diameter defined by the outer bearing surface 12f of the trunnion 12, thus defining an annular space 15 therebetween. A plurality of conventional roller bearings 21 (only two are illustrated) are disposed in the annular space 15 in a circumferential array about the trunnion 12. The roller bearings 21 have axially outer ends 21a located adjacent to the closed end 20a of the bearing cup 20 and axially inner ends 21b located adjacent to the open end 20b of the bearing cup 20. As is well known, the roller bearings 21 are provided to facilitate rotational movement of the bearing cup 20 relative to the trunnion 12.

An annular thrust washer, indicated generally at 23, is provided between the axially outer end surface 12g of the trunnion 12 and the inner surface of the closed end 20a of the bearing cup 20. The thrust washer 23 is conventional in the art and is provided to reduce the amount of friction between the trunnion 12 and the associated bearing cup 20 when relative rotation occurs. The thrust washer 23 also reduces the amount of friction between the roller bearings 21 and the associated bearing cup 20. Moreover, the thrust washer 23 enables the bearing cup 20 to fit tightly on the trunnion 12 to prevent the cross 10 and trunnion 12 from endwise movement relative to the bearing cup 20 during operation, thereby reducing the amount of undesirable noise and vibration.

An annular seal, indicated generally at 25, is provided about the open end 20b of each of the bearing cups 20. The seal 25 is conventional in the art and includes a metallic

4

support ring 26 and an elastomeric seal 27. The illustrated support ring 26 is generally S-shaped in cross section (although such is not required) and includes a radially inwardly extending flange portion 26a, an axially extending body portion 26b, and a radially outwardly extending flange portion 26c. The central portion 26b defines an outer diameter that is slightly larger than an inner diameter defined by the inner bearing surface 20c of the bearing cup 20. Thus, the support ring 26 can be pressed into the inner bearing surface 20c and retained within the bearing cup 20 by friction. The elastomeric seal 27 is attached to the support ring 26 by any conventional means, such as by adhesive bonding. The illustrated elastomeric seal 27 includes a plurality of sealing lips 27a, 27b, and 27c (although such is not required) that extend radially inwardly into engagement with the sealing surface 12d and the second tapered surface 12e of the trunnion 12. As best shown in FIG. 2, the sealing lips 27a, 27b, and 27c may extend in different axial directions if desired.

An annular dust guard, indicated generally at 30, is removably secured about the open end 20b of each of the bearing cups 20. The illustrated dust guard 30 is generally L-shaped in cross section (although such is not required) and defined by an axially extending outer portion 30a and a radially extending inner portion 30b. The axially extending outer portion 30a of the dust guard 30 terminates in an annular flange 30c that extends radially inwardly into an annular groove 20e formed in the outer surface of the bearing cup 20. The flange 30c defines an inner diameter that is smaller than the outer diameter of the open end 20b of the bearing cup 20. Thus, the cooperation of the flange 30c with the groove 20e retains the dust guard 30 on the bearing cup 20.

The radially extending inner portion 30b of the dust guard 30 extends radially inwardly toward the trunnion 12 and terminates in an inner friction surface 30d. Preferably, the inner friction surface 30d is generally semi-circular in cross sectional shape, although other shapes may be used if desired. The inner diameter defined by the inner friction surface 30d is slightly smaller than the outer diameter defined by the friction surface 12a of the trunnion 12. Thus, the inner friction surface 30d of the dust guard 30 frictionally engages the friction surface 12a of the trunnion 12. The inner diameter defined by the inner friction surface 30d is substantially smaller than the outer diameter defined by the annular ridge 12b extending from the trunnion 12. Thus, the inner friction surface 30d of the dust guard 30 is positively retained on the trunnion 12.

The dust guard 30 can be formed from any desired material. Preferably, the dust guard is formed from a relatively stiff, but somewhat flexible, plastic material, such as Xenon 6123M plastic material that is commonly available in the market.

To assemble the bearing cup 20 onto the cross 10, the thrust washer 23 and the roller bearings 21 are initially assembled into the bearing cups 20. The elastomeric seal 25 is then pressed into frictional engagement with the inner bearing surface 20c of the bearing cup 20. Next, the dust guard 30 is snapped onto the open end 20b of the bearing cup 20 by pushing the axially extending portion 30a of the dust guards 30 over the open end 20b until the flange 30c snaps into the groove 20e. When this occurs, the dust guard 30 is retained about the open end 20b of the bearing cup 20. However, because the inner diameter of the axially extending portion 30a of the dust guard 30 is slightly larger than the outer diameter of the open end 20b of the bearing cup 20, the dust guard 30 fits loosely on the bearing cup 20. The

6,077,166

5

bearing cup 20 is next assembled onto the trunnion 12 by positioning the open end 20b thereof adjacent to the axially outer end surface 12g of the trunnion 12. The bearing cup 20 is then moved axially inwardly toward the body portion 11 of the cross 10. Little frictional resistance is initially offered against such movement because the inner diameter of the dust guard 30 is larger than the outer diameters of the bearing surface 12f and the sealing surface 12d of the trunnion 12. When the inner friction surface 30d of the dust guard 30 approaches the annular ridge 12b, additional force must be applied to overcome the interference fit between the inner friction surface 30d of the dust guard 30 and annular ridge 12b. Such additional force causes the inner friction surface 30d to snap over the annular ridge 12b and slide onto the friction surface 12a of the trunnion 12. At this point, the bearing cup 20 is properly positioned relative to the trunnion 12.

As illustrated in FIG. 3, the flexible character of the dust guard 30 permits axial displacement of the radially extending portion 30b of the dust guard 30, as well as radial displacement of the axially extending portion 30a of the dust guard 30. As the dust guard 30 is mounted about the trunnion 12, the radially extending portion 30b is advanced towards the crest of the annular ridge 12b. As the radially extending portion 30b is advanced towards the crest, the radially extending portion 30b flexes axially outwardly and away from the body portion 11 of the cross 10. As the radially extending portion 30b reaches the crest, the axially extending portion 30a flexes radially outwardly. As the radially extending portion 30b is advanced beyond the crest, the radially extending portion 30b flexes axially inward towards the body portion 11 of the trunnion 12. At this juncture, the radially extending portion 30b returns to a position substantially perpendicular to the friction surface 12a of the trunnion 12 and the axially extending portion 30a resumes a position substantially parallel to an axis defined by the trunnion 12. The friction surface 30d of the dust guard 30 frictionally engages the friction surface 12a of the trunnion 12. A tight frictional contact is achieved because the inner diameter of the friction surface 30d of the dust guard 30 is slightly smaller than the outer diameter of the friction surface 12a of the trunnion 12.

Because of the interference fit between the frictional surface 30d of the dust is guard 30 and the protrusion 12b, and further because of the frictional engagement between the friction surface 30d of the dust guard 30 and the friction surface 12a of the trunnion 12, the dust guard 30 is retained on the trunnion 12 when installed as set forth above. The bearing cup 20 is also retained on the trunnion 12, since the flange 30c of the dust guard 30 extends into the groove 20e of the bearing cup 20. By retaining the bearing cup 20 on the trunnion 12 in this manner, there is generally no need for external straps or other devices to retain the bearing cup 20 on the trunnion 12 when shipping the cross 10 for subsequent installation. Since there is a loose fit between the dust guard 30 and the bearing cup 20 (provided by the clearance between the reduced diameter portion 20e of the bearing cup 20 and the axially extending portion 30a of the dust guard 30 and further between the groove 20e and the flange 30c), the bearing cup 20 is free to rotate relative to the dust guard 30 without interference with dust guard 30, even after installation.

Although the annular ridge 12b has been described and illustrated as being formed in the friction surface 12a at or near the axially outer end thereof, it will be appreciated that the annular ridge 12b may be formed at any other desired location on the trunnion 12. Also, the ridge 12b need not

6

extend completely about the circumference of the trunnion 12, but rather may be formed as one or more discrete portions on the trunnion 12 that are engaged by the inner friction surface 30d of the dust guard 30. Furthermore, although the illustrated ridge 12b is substantially convex in cross sectional shape, other shapes may be used if desired.

In accordance with the provisions of the patent statutes, the principle and mode of operation of this invention have been explained and illustrated in its preferred embodiment. However, it must be understood that this invention may be practiced otherwise than as specifically explained and illustrated without departing from its spirit or scope.

What is claimed is:

1. A cross for a universal joint assembly comprising:
   a central body portion;
   a trunnion extending outwardly from said central body portion; and
   a ridge formed on said trunnion, said ridge defining an outer diameter that is larger than an outer diameter defined by a portion of said trunnion extending between said central body portion and said ridge.

2. The cross defined in claim 1 wherein a plurality of trunnions extend outwardly from said central body portion.

3. The cross defined in claim 2 wherein a ridge is formed on each of said trunnions, each of said ridges defining an outer diameter that is larger than an outer diameter defined by portions of said trunnions extending between said central body portion and said ridges.

4. The cross defined in claim 1 wherein said ridge is an annular ridge.

5. The cross defined in claim 1 wherein said trunnion includes a cylindrical outer friction surface that extends axially outwardly from said central body portion, and wherein said ridge is formed in said friction surface.

6. The cross defined in claim 5 wherein said trunnion includes a tapered surface that extends axially outwardly from said ridge.

7. The cross defined in claim 6 wherein said trunnion includes a cylindrical sealing surface that extends axially outwardly from said tapered surface.

8. The cross defined in claim 7 wherein said tapered surface is a first tapered surface, and wherein said trunnion includes a second tapered surface that extends axially outwardly from said sealing surface.

9. The cross defined in claim 8 wherein said trunnion includes a cylindrical bearing surface that extends axially outwardly from said second tapered surface.

10. The cross defined in claim 1 wherein said ridge defines an outer diameter that is larger than outer diameters defined by portions of said trunnion adjacent to said ridge.

11. A cross for a universal joint assembly comprising:
   a central body portion;
   a trunnion extending outwardly from said central body portion;
   a ridge formed on said trunnion, said ridge defining an outer diameter that is larger than an outer diameter defined by a portion of said trunnion extending between said central body portion and said ridge;
   a bearing cup mounted on said trunnion for relative rotation; and
   a dust guard including an inner friction surface that frictionally engages said portion of said trunnion extending between said central body portion and said ridge.

12. A cross defined in claim 11 wherein a plurality of trunnions extend outwardly from said central body portion.

6,077,166

7

13. The cross defined in claim 12 wherein a ridge is formed on each of said trunnions, each of said ridges defining an outer diameter that is larger than an outer diameter defined by portions of said trunnions extending between said central body portion and said ridges.

14. The cross defined in claim 11 wherein said ridge is an annular ridge.

15. The cross defined in claim 11 wherein trunnion includes a cylindrical outer friction surface that extends axially outwardly from said central body portion, and wherein said ridge is formed in said friction surface.

16. The cross defined in claim 15 wherein said trunnion includes a tapered surface that extends axially outwardly from said ridge.

8

17. The cross defined in claim 16 wherein said trunnion includes a cylindrical sealing surface that extends axially outwardly from said tapered surface.

18. The cross defined in claim 17 wherein said tapered surface is a first tapered surface, and wherein said trunnion includes a second tapered surface that extends axially outwardly from said sealing surface.

19. The cross defined in claim 18 wherein said trunnion includes a cylindrical bearing surface that extends axially outwardly from said second tapered surface.

20. The cross defined in claim 11 wherein said ridge defines an outer diameter that is larger than outer diameters defined by portions of said trunnion adjacent to said ridge.

*  *  *  *  *

**EXHIBIT 2**



## UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Nov 6 04:20:51 EST 2003*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

Check Status *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

# SPICER

| | |
|---|---|
| **Word Mark** | SPICER |
| **Goods and Services** | IC 006 007 008 009 011 012 016 021 028. US 023. G & S: POWER TRANSMISSION MECHANISMS-NAMELY, [GEARS AND GEAR BOXES, POWER TAKE-OFFS, HYDRAULIC TORQUE CONVERTERS, CLUTCHES], UNIVERSAL JOINTS, PROPELLER SHAFTS AND AXLES, [AND PARTS THEREOF]. FIRST USE: 19310201. FIRST USE IN COMMERCE: 19310201 |
| **Mark Drawing Code** | (5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM |
| **Serial Number** | 72045536 |
| **Filing Date** | February 10, 1958 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Change In Registration** | CHANGE IN REGISTRATION HAS OCCURRED |
| **Registration Number** | 0679554 |
| **Registration Date** | June 2, 1959 |
| **Owner** | (REGISTRANT) DANA CORPORATION CORPORATION VIRGINIA 4500 DORR STREET TOLEDO OHIO 43615 |

| | |
|---|---|
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Prior Registrations** | 0432306 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. |
| **Renewal** | 2ND RENEWAL 19990729 |
| **Live/Dead Indicator** | LIVE |

PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | TOP | HELP

**HOME | INDEX | SEARCH | SYSTEM ALERTS | BUSINESS CENTER | NEWS&NOTICES | CONTACT US | PRIVACY STATEMENT**



## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Nov 6 04:20:51 EST 2003*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP |

Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

Check Status | *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

# SPICER

| | |
|---|---|
| **Word Mark** | SPICER |
| **Goods and Services** | IC 006. US 014. G & S: METAL STAMPINGS, CASTINGS, AND FORGINGS FOR PARTS USED IN AUTOMOTIVE VEHICLES, AGRICULTURAL EQUIPMENT AND MACHINERY, INDUSTRIAL EQUIPMENT [ AND AIRCRAFT ]. FIRST USE: 19310201. FIRST USE IN COMMERCE: 19310201 |
| **Mark Drawing Code** | (5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM |
| **Serial Number** | 72061266 |
| **Filing Date** | October 24, 1958 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Registration Number** | 0688178 |
| **Registration Date** | November 17, 1959 |
| **Owner** | (REGISTRANT) DANA CORPORATION CORPORATION VIRGINIA 4500 DORR STREET TOLEDO OHIO 43615 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |

| | |
|---|---|
| **Prior Registrations** | 0432306 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. |
| **Renewal** | 2ND RENEWAL 20000713 |
| **Live/Dead Indicator** | LIVE |



# UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Nov 6 04:20:51 EST 2003*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP |

| Logout | Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| Check Status | *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

# SPL123X

| | |
|---|---|
| **Word Mark** | SPL123X |
| **Goods and Services** | IC 012. US 019. G & S: universal joint kits for use in drivelines for vehicles. FIRST USE: 19920515. FIRST USE IN COMMERCE: 19920515 |
| **Mark Drawing Code** | (5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM |
| **Serial Number** | 74161981 |
| **Filing Date** | April 29, 1991 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | January 5, 1993 |
| **Registration Number** | **1802662** |
| **Registration Date** | November 2, 1993 |
| **Owner** | (REGISTRANT) Dana Corporation CORPORATION VIRGINIA 4500 Dorr Street Toledo OHIO 43615 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of** | Robert M. Leonardi |

| | |
|---|---|
| **Record** | |
| **Description of Mark** | The number 123 shown in broken lines represents a part or model number consisting of two or three digits which vary depending on use of the mark. |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |

PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | TOP | HELP

HOME | INDEX | SEARCH | SYSTEM ALERTS | BUSINESS CENTER | NEWS&NOTICES | CONTACT US | PRIVACY STATEMENT



# UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Nov 6 04:20:51 EST 2003*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP |

**Logout** Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

**Check Status** *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | SPL |
| **Goods and Services** | IC 012. US 019 021 023 031 035 044. G & S: driveshaft assemblies for land vehicles, and parts thereof, namely shafts, yokes, universal joints, bearings, bearing caps, splined sleeves, spring tabs, straps and bolts. FIRST USE: 19930630. FIRST USE IN COMMERCE: 19930630 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 75053753 |
| **Filing Date** | February 5, 1996 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | September 24, 1996 |
| **Registration Number** | 2024024 |
| **Registration Date** | December 17, 1996 |
| **Owner** | (REGISTRANT) Dana Corporation CORPORATION VIRGINIA 4500 Dorr Street Toledo OHIO 43615 |
| | (LAST LISTED OWNER) SPICER DRIVESHAFT, INC. CORPORATION BY ASSIGNMENT OHIO 6201 TRYUST DRIVE HOLLAND OHIO 43528 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |

| | |
|---|---|
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | TOP | HELP |
|---|---|---|---|---|---|---|---|---|

HOME | INDEX | SEARCH | SYSTEM ALERTS | BUSINESS CENTER | NEWS&NOTICES |
CONTACT US | PRIVACY STATEMENT

**EXHIBIT 3**

HAMPTON INN AIRLINE    2269274008    08/27/03  04:21pm  P. 001



## S & S TRUCK PARTS, INC.
600 WEST IRVING PARK ROAD
SCHAUMBURG, IL 60193
PHONE: 847-584-2000
FAX: 847-584-3000
TOLL FREE PHONE: 1-800-621-1553
TOLL FREE FAX : 1-800-621-1558
VISIT OUR WEBSITE AT WWW.SANDSTRUCK.COM



**PARTS COMPONENT GROUP**

# NOW AVAILABLE

## NEW ★ STAR
## SPL U-JOINTS

Missseunga
905 564 7100







| NEWSTAR NUMBER | REFERENCE NUMBER | DESCRIPTION | OUR PRICE |
|---|---|---|---|
| S-E129 | 37.05 | SPL90X | UNIVERSAL JOINT | 28.50 |
| S-E358 | 59.25 | SPL170X | UNIVERSAL JOINT | 47.00 |
| S-E359 | 90.00 | SPL250X | UNIVERSAL JOINT | 70.00 |

## SPL U-JOINT STRAP KITS:

| NEWSTAR NUMBER | REFERENCE NUMBER | DESCRIPTION | OUR PRICE |
|---|---|---|---|
| S-D756 | 5.06 | SD 90-70-28X | SPL 90 STRAP KIT | 3.25 |
| S-D757 | 9.41 | SD 170-70-18X | SPL 170 STRAP KIT | 6.25 |
| S-D758 | 9.45 | SD 250-70-18X | SPL 250 STRAP KIT | 6.50 |

PART NUMBERS ARE USED FOR IDENTIFICATION ONLY. PRICES ARE SUBJECT TO CHANGE OR WITHDRAWL WITHOUT NOTICE.



EXHIBIT 3

**EXHIBIT 4**

# S&S Truck Parts Canada Inc.

PACKING SLIP / BORDEREAU D'EXPÉDITION

MANUFACTURERS · DISTRIBUTORS
AUTOMOTIVE & INDUSTRIAL PARTS
FABRICANT · DISTRIBUTEUR DE PIÈCES

ALL MERCHANDISE REMAINS THE PROPERTY OF THE SELLER
UNTIL PAID IN FULL
LES MARCHANDISES DEMEURENT LA PROPRIÉTÉ DU VENDEUR
JUSQU'À COMPLET ACQUITTEMENT DE CETTE FACTURE

| CUSTOMER NO. / CLIENT Nº | ORDER NO. / COMMANDE Nº | | PAGE NO. / PAGE Nº |
|---|---|---|---|
| 024230 | 0525830 | | 1 |

SOLD TO:
MACK SALES & SERVICE OF DURHAM
610 FINLEY AVE.
AJAX
ONTARIO
L1S 2E3

SHIP TO:
SAME

TERMS / CONDITIONS: NET 30 DAYS

FREIGHT / TRANSPORT: COLLECT

| ITEM | PART NO. | DESCRIPTION | | QTY SHIPPED | PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| 1 | S-E127 | U-JOINT – SPL SERIES | SPL90X | 1 | 37.05 | 37.05 |
| 2 | S-E356 | U-JOINT – SPL SERIES | SPL170X | 1 | 59.25 | 59.25 |
| 3 | S-D756 | STRAP KIT – SPL90X | 90-70-28X | 1 | 5.06 | 5.06 |
| 4 | S-D757 | STRAP KIT – SPL170X | 170-70-18X | 1 | 9.41 | 9.41 |
| 5 | S-D758 | STRAP KIT – SPL SERIES | 250-70-18X | 1 | 9.45 | 9.45 |
| 6 | S-E359 | U-JOINT – SPL SERIES | SPL250X | 0 | 90.00 | .00 |

THANK-YOU

FROM: S & S TRUCK & TRACTOR PARTS INC.
6460 KESTREL ROAD
MISSISSAUGA
ONTARIO
L5T 1Z7

TO:
MACK SALES & SERVICE OF DURHAM
610 FINLEY AVE.
AJAX
ONTARIO
L1S 2E3

RETURN GOODS MUST HAVE PRIOR APPROVAL – SUBJECT TO
RESTOCKING CHARGE OF 15%.
MARCHANDISES RENVOYÉES UNIQUEMENT APRÈS APPROBATION –
SUJET À DES FRAIS DE RESTOCKAGE DE 15%.

– RETURN POSTAGE GUARANTEED –

EXHIBIT

**EXHIBIT 5**

8000 SERIES
30% P.C.W.

RECYCLED





EXHIBIT

5

**EXHIBIT 6**

80000 SERIES
10% P.C.W.
RECYCLED®



EXHIBIT
6

U-JOINT SPL90 SERIES — SPICER LIFE

# SDSPL90



0054

Civil Cover Sheet

Page 1 of 2





## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

NOV - 7 2003

03 NOV -6 PM 4: 21

FILED-EDS

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Northern District of Illinois.

**Plaintiff(s): Dana Corporation and Torque-Traction Technologies, Inc.**

County of Residence:

Plaintiff's Atty:    Manotti L. Jenkins
Michael Best & Friedrich, LLP
401 N. Michigan Ave., Suite
1900 Chicago, IL 60611
(312) 222-0800

**Defendant(s):S&S Truck Parts, Inc.**

County of Residence:    JUDGE ASPEN

Defendant's Atty:

MAGISTRATE JUDGE KEYS

03C 7910

II. Basis of Jurisdiction:    **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal
Parties (Diversity Cases Only)
           Plaintiff:-**N/A**
           Defendant:-**N/A**

IV. Origin :    **1. Original Proceeding**

V. Nature of Suit:    **830 Patent**

VI.Cause of Action:    **Patent Infringement under 35 U.S.C. Sec. 100, et seq. and Trademark Infringement/Unfair Competition under 15 U.S.C. Sec. 1051-1127**

VII. Requested in Complaint
      Class Action:**No**
      Dollar Demand:**N/A**
      Jury Demand:**Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature:

Date:    11/6/03

<small>If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it.</small>

DOCKETED

NOV - 7 2003

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In the Matter of

Dana Corporation and Torque-Traction Technologies, Inc.

v.

S&S Truck Parts, Inc.

FILED-EOD

03 NOV -6 PM 4: 21

Case Number: **03C 7910**

JUDGE ASPEN

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiffs Dana Corporation and Torque-Traction Technologies, Inc.

MAGISTRATE JUDGE KEYS

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Manotti L. Jenkins | NAME Michael K. Nutter |
| FIRM Michael Best & Friedrich, LLP | FIRM Michael Best & Friedrich, LLP |
| STREET ADDRESS 401 N. Michigan Ave., Suite 1900 | STREET ADDRESS 401 N. Michigan Ave., Suite 1900 |
| CITY/STATE/ZIP Chicago, Illinois 60611 | CITY/STATE/ZIP Chicago, Illinois 60611 |
| TELEPHONE NUMBER (312) 222-0800   FAX NUMBER (312) 222-0818 | TELEPHONE NUMBER (312) 222-0800   FAX NUMBER (312) 222-0818 |
| E-MAIL ADDRESS mljenkins@mbf-law.com | E-MAIL ADDRESS mknutter@mbf-law.com |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6276932 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6243586 |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☑ | MEMBER OF TRIAL BAR?   YES ☐   NO ☑ |
| TRIAL ATTORNEY?   YES ☑   NO ☐ | TRIAL ATTORNEY?   YES ☑   NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☑ |
| (C) | (D) |
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER   FAX NUMBER | TELEPHONE NUMBER   FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☐ | MEMBER OF TRIAL BAR?   YES ☐   NO ☐ |
| TRIAL ATTORNEY?   YES ☐   NO ☐ | TRIAL ATTORNEY?   YES ☐   NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ |